**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

EVANSTON INSURANCE COMPANY,

    Plaintiff,

v.

REPUBLIC PROPERTIES, INC., CIMINELLI REAL ESTATE SERVICES OF FLORIDA, LLC, COREY STANELY, JR. , LAURETTE MUNIZ-MARCHA, ELIZABETH GARCIA, JESSICA CAMACHO and VICTORIA LEE CANELLAS,

    Defendants/Third Party Plaintiff,

JAMES RIVER INSURANCE COMPANY and DIMAGGIO'S ULTRA LOUNGE CORP.,

    Third Party Defendants.
_____/

Case No: 6:16-cv-1649-Orl-40GJK

## **ORDER**

This cause comes before the Court without oral argument on Plaintiff Evanston Insurance Company's Motion to Dismiss Ciminelli Real Estate Services of Florida, LLC's Counterclaim and to Strike Ciminelli's Fifth and Sixth Affirmative Defenses (Doc. 138), filed August 31, 2017; and Defendant, Ciminelli's Memorandum of Law in Opposition (Doc. 141), filed September 13, 2017. The parties have completed their briefing and the Court is otherwise fully advised on the premises. Upon consideration, the motion is denied.

**I.    BACKGROUND[1]**

Plaintiff, Evanston Insurance Company ("Evanston"), brings this action pursuant to the Declaratory Judgment Act to resolve an insurance coverage. At all relevant times, Defendant, Republic Properties, Inc. ("Republic"), owned real property located at 7432 Universal Boulevard in Orlando, Florida (the "Subject Property" or "building 7432"). In 2002, Republic hired Defendant, Ciminelli Real Estate Services of Florida, LLC ("Ciminelli"), as its property manager with respect to real property described as "Republic Square", which included the Subject Property. Republic leased the Subject Property to DiMaggio's Ultra Lounge Corp. ("DiMaggio's"), who used the property to operate a nightclub.

Evanston issued two commercial general liability insurance policies to Republic covering the Subject Property; one policy covered the Subject Property for the policy period of January 23, 2015 to January 23, 2016 (the 2015–2016 Policy"), and the other policy covered the Subject Property for the policy period of January 23, 2016 to January 23, 2017 (the "2016–2017 Policy) (collectively, the "Policies"). The Policies require Evanston to defend and indemnify Republic for covered bodily injuries or property damage. Because of its engagement as Republic's property manager, Ciminelli apparently qualifies as an additional insured under the Policies.

At approximately 1:00 a.m. on February 7, 2016, a shooting incident occurred at the nightclub operated at the Subject Property that resulted in the death of two individuals

---

[1] This account of the facts is taken from Plaintiff's Fourth Amended Complaint (Doc. 126) and Defendant, Ciminelli's Answer and Counterclaim (Doc. 129). The Court accepts the allegations of Ciminelli's Answer and Counterclaim as true for purposes of deciding Evanston's Motion to Dismiss Ciminelli's Counterclaim (Doc. 138). *Whitney Info. Network v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005).

and injuries to several others. Some of those who suffered injuries have submitted claims to Republic or have sued Republic to recover for their injuries. On or about June 8, 2016, Corey Stanley, Jr. filed suit in state court against Republic, Ciminelli, and DiMaggio's for injuries allegedly suffered in a separate shooting incident at the Subject Property nightclub in October 2015. Evanston advised Republic and Ciminelli that it would investigate these claims and lawsuits subject to a reservation of rights.

In the operative complaint, Evanston alleged that Republic provided false information when it applied for the Policies. Specifically, Republic described the Subject Property as a vacant building in its applications with Evanston, when in fact the Subject Property was being operated as a nightclub. Because the Policies only provide coverage for the operations specified in the application for insurance—that is, for a vacant building—Evanston contends that it owes no duty to defend or indemnify Republic or Ciminelli against any of the claims or lawsuits arising out of the February 7, 2016 or October 2015 shooting incidents, when the Subject Property was being operated as a nightclub. Evanston therefore initiated this lawsuit seeking a declaratory judgment stating as much.

Along with its Answer, Ciminelli brought a counterclaim seeking reformation of the Policies based on mutual mistake. (Doc. 129). Ciminelli alleges that "[d]ue to mutual mistakes caused by scrivener's error and/or inadvertence", the properties insured under the Policies were misidentified, whereby the Subject Property was mistakenly designated "vacant". (Doc. 129, ¶¶ 14–17). Therefore, Ciminelli seeks to reform the Policies to reflect that the Subject Property was not vacant.

Evanston now moves to dismiss Ciminelli's reformation counterclaim and to strike Ciminelli's fifth and sixth affirmative defenses. (Doc. 138).

## II.     STANDARD OF REVIEW

A complaint (or counterclaim)[2] must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Thus, in order to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Though a complaint need not contain detailed factual allegations, mere legal conclusions or recitation of the elements of a claim are not enough. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts must also view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam).

At the motion to dismiss stage, district courts must generally constrain their review to the "four corners of the complaint." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). A "document outside the four corners of the complaint may still be considered

---

[2] A motion to dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. *Whitney Info. Network v. Gagnon*, 353 F. Supp. 2d 1208, 1210 (M.D. Fla. 2005).

4

if it is central to the plaintiff's claims and is undisputed in terms of authenticity." *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

## III. DISCUSSION

### A. Evanston's Motion to Dismiss

The thrust of Ciminelli's counterclaim is that the Subject Property was listed as vacant on the Policies because of mutual mistake. (Doc. 141). Ciminelli asserts that Evanston knew that the Subject Property was operated as a nightclub, and agreed to insure it as such. (*Id.* at pp. 8–9). Because of a scrivener's error, Ciminelli argues, building number "7430" was transposed with building number "7432" on the inspector's report (the "Inspection Report"),[3] and that error transferred to the Policies. "The square footage of the buildings is the key to understanding the insurance that was intended." (Doc. 141, p. 8). Evanston knew the Subject Property was occupied by a nightclub—and not vacant—for two reasons: (1) Evanston's inspector was advised that the nightclub was in the "smallest building by square footage";[4] and (2) Evanston's inspector went inside building

---

[3] Although the Inspection Report and Policies fall outside the four corners of Ciminelli's counterclaim, the Court is satisfied that review of such documents is proper because both are central to Ciminelli's reformation claim and their authenticity is undisputed. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005).

[4] The Subject Property is the smallest insured building by square footage. The Policies state that the Subject Property is 7278 square feet. (Doc. 126-3, p. 9; Doc. 126-4, p. 10). The Inspection Report states that the Subject Property is 7533 square feet. (Doc. 138-1, p. 2). The next smallest building is 11,771 square feet, and 11,769 square feet, according to the Inspection Report and Policies, respectively. (Doc. 138-1, p. 2; Doc. 126-3, p. 8; Doc. 126-4, p. 9).

The Inspection Report stated: "Building 7430 / 7533 sq ft has a late night /weekend nightclub as a tenant." (Doc. 138-1, p. 2). The same Report stated "Building 7432 / 19,324 sq ft is currently vacant . . . ." (*Id.*).

number 7430 and 7432 (the Subject Property) and personally observed which was operating a nightclub. (*Id.* at pp. 8–9).

In its motion to dismiss, Evanston argues that there was no mistake, and the parties should be bound by their agreement as expressed by the Policies. (Doc. 138). Evanston further argues that reformation would necessitate "post-loss underwriting" and would expose Evanston to risks it never agreed to assume. (*Id.* at pp. 12–13). Evanston also argues in passing that reformation would be inequitable because the mistake allowed Ciminelli to pay low premiums that would not otherwise support the coverage afforded by the reformation. (*Id.* at p. 13). Put another way, Evanston alleges that if the Policies are reformed, Ciminelli will receive a windfall in coverage because it underpaid in premiums.

Evanston's motion proceeds from a false premise. Evanston asserts that "it was the *larger location* that was designated as vacant in the policies, and therefore there was clearly no mistake in the Policies." (Doc. 138, p. 3). This assertion is incorrect, and clarification is necessary. The "larger location" (among the two identified in Ciminelli's argument), building 7430, was designated in the Policies as "BUILDINGS OR PREMISES – BANK OR OFFICE – MERCANTILE OR MANUFACTURING". (Doc. 126-3, p. 8; Doc. 126-4, p. 9). The "smaller location", the Subject Property (building 7432), was designated in the Policies as "VACANT BUILDINGS". (Doc. 126-3, p. 9; Doc. 126-4, p. 10). Per the

Policies, the building numbers associated with the square footage was correct,[5] but the use designations[6] were incorrect.

As noted above, the Inspection Report stated that building 7430 was 7,533 square feet and was operated as a nightclub. (Doc. 138-1, p. 2). The Report also described building 7432 as 19,324 square feet and vacant. (*Id.*). Per the Inspection Report, the building numbers associated with the square footage was incorrect, but the use designations (*using square footage as the building identifier*)[7] were correct.

Under Florida law, "[a] court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties." *Essex Ins. Co. v. Tina Marie Entm't, LLC*, 602 F. App'x 471, 473 (11th Cir. 2015) (per curiam) (alteration in original) (quoting *Providence Square Ass'n v. Biancardi*, 507 So. 2d 1366, 1369 (Fla. 1987)). "A mistake is mutual when it is shown that the parties agreed on one thing and when they put it in the contract they said something different." *Blumberg v. Am. Fire Ins. & Cas. Co.*, 51 So. 2d 182, 184 (Fla. 1951).

---

[5] That is, the Policies correctly state that building 7430 was approximately 19,550 square feet. And although building number 7432 is not identified by number in the Policies, it is easily discerned as the smallest property by square footage, being described as approximately 7,278 square feet.

[6] By "use designations," the Court refers to the classification of each property as vacant or occupied by a business. (Doc. 126-3, pp. 8–9; Doc. 126-4, pp. 9–10).

[7] Because the crux of Ciminelli's argument is that building number "7430" was erroneously transposed with "7432" in the Inspection Report, Ciminelli argues that the square footage—not the building numbers—should be used to identify the properties described in the Inspection Report.

Because Ciminelli's reformation claim alleges a *mistake*, it must meet the pleading standards imposed by Rule 9(b) in addition to Rule 8, Fed. R. Civ. P.[8] Claims asserting mistake must include "specific allegations identifying the factual basis supporting each of the elements of [the plaintiff's] claim of mistake" to satisfy Rule 9(b). *Barber v. Am.'s Wholesale Lender*, No. 8:12–cv–1124–T–27TBM, 2013 WL 1149316, at *4 (M.D. Fla. Mar. 19, 2013).

Upon review of the counterclaim, the motion to dismiss and response, and the Inspection Report and Policies, the Court finds that Ciminelli's reformation claim contains sufficient facts to state a plausible claim for relief. Ciminelli adequately alleges that the parties had an agreement as to the designation of properties to be insured, but that, due to inadvertence or scrivener's error, the Policies do not reflect that agreement. Moreover, the counterclaim meets Rule 9(b)'s heightened pleading standard because it specifically details the underlying agreement and the terms in the Policies and Inspection Report demonstrating the mistake. Evanston's remaining arguments for dismissal have little merit.[9] Therefore, Evanston's motion to dismiss Ciminelli's reformation counterclaim is denied.

---

[8] "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

[9] Evanston's fear that the Court may engage in "post-loss underwriting" is not germane to the question of whether Ciminelli sufficiently pled its reformation claim. The same is true with regard to Evanston's arguments that (1) it did not agree to the potential risks reformation would impose, and (2) Ciminelli paid insufficient premiums. Moreover, the Court notes that Evanston persuasively argues that these concerns are invalid. (Doc. 141, pp. 11–13).

### B. Evanston's Motion to Strike

Federal Rule of Civil Procedure 12(f) allows a court to strike "any redundant, immaterial, impertinent, or scandalous matter" from a party's pleading. However, striking material is a "drastic remedy to be resorted to only when required for the purposes of justice." *Jackson v. Grupo Indus. Hotelero, S.A.*, No. 07-22046-CIV, 2008 WL 4648999, at *14 (S.D. Fla. Oct. 20, 2008) (internal quotation marks omitted). Ultimately, prejudice to the moving party is the cornerstone of Rule 12(f). *See Embler v. Walker Elec. Sys. of Fla., Inc.*, No. 2:05-cv-256-FtM-33SPC, 2006 WL 1406366, at *1 (M.D. Fla. May 18, 2006). As such, motions to strike are generally disfavored and should only be granted as a remedy for material that "ha[s] no possible relation to the controversy and may cause prejudice to one of the parties." *Jackson*, 2008 WL 4648999, at *14.

Evanston moves to strike Ciminelli's fifth and sixth affirmative defenses. Ciminelli's fifth affirmative defense alleges that Evanston "waived or is estopped from asserting coverage issue based on the disputed vacancy status of the" Subject Property. (Doc. 129, p. 9). Eight months before the first shooting, Evanston was put on notice by the Inspection Report that the Subject Property was being operated as a nightclub. (*Id.*). Evanston also received an inflated premium "that exceeded the risk when considering the status of all insured properties." (*Id.*).

Evanston moves to strike the fifth affirmative defense as insufficiently pled and insufficient as a matter of law. (Doc. 138, p. 16). First, Evanston argues that the allegations of the fifth affirmative defense are contradicted by the Inspection Report, which controls. (*Id.*). In support, Evanston provides the following quotation from the Inspection Report: "Building **7430** . . . has a late night / weekend nightclub as a tenant."

(*Id.*). This argument is belied by the stated square footage of the building identified as "Building 7430", which Evanston conveniently omitted from its selected quotation. The Inspection Report states, in full: "Building 7430 / **7533 sq ft** has a late night /weekend nightclub as a tenant." (Doc. 138-1, p. 2 (emphasis added)). The "7533 sq ft" designation is critical to understanding Ciminelli's position. Ciminelli argues that the building number "7430" was transposed with "7432" in the Inspection Report, and that Evanston should have known under the circumstances. (*See* note 6, *supra*). Thus, reading the Inspection Report in proper context, it does not contradict the fifth affirmative defense.

Evanston next argues that Ciminelli's Fifth Affirmative Defense fails to comply with Federal Rule of Civil Procedure 8. Upon review, the Court declines to strike Ciminelli's fifth affirmative defense.

Finally, Evanston asserts that Ciminelli's sixth affirmative defense—that the Policies should be reformed—is insufficient as a matter of law for the reasons identified in its motion to dismiss. The Court denied Evanston's motion to dismiss Ciminelli's reformation counterclaim, and, for the same reasons, denies Evanston's motion to strike Ciminelli's sixth affirmative defense.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Plaintiff Evanston's Motion to Dismiss Ciminelli's Counterclaim and to Strike Ciminelli's Fifth and Sixth Affirmative Defenses (Doc. 138) is **DENIED**. Evanston shall answer Ciminelli's Counterclaim no later than **fourteen (14) days** from the date of this Order.

**DONE AND ORDERED** in Orlando, Florida on December 4, 2017.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties